FILED
United States Court of Appeals
Tenth Circuit

April 19, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PHILLIP HILL,

Plaintiff - Appellee,

v.

No. 09-3182

RICOH AMERICAS
CORPORATION,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 2:08-CV-02548-KHV-DJW)**

Kimberly S. King (Jeffrey D. Hanslick, with her on the briefs), Husch Blackwell
Sanders LLP, Kansas City, Missouri, for Defendant - Appellant.

Robert J. Wonnell (Carl A. Gallagher, with him on the brief), McAnany, Van
Cleave & Phillips, P.A., Kansas City, Kansas, for Plaintiff - Appellee.

Before **HENRY,** Chief Circuit Judge, **BRISCOE,** and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

Phillip Hill sued Ricoh Americas Corporation in the United States District

Court for the District of Kansas, alleging that he was terminated from his position

at Ricoh in violation of the Sarbanes-Oxley Act (SOX), *see* 18 U.S.C. § 1514A,

and Kansas common law prohibiting retaliatory discharge.[1]  Five months after suit was filed, Ricoh moved to stay the case and compel arbitration under the arbitration clause in its employment agreement with Mr. Hill.  The district court denied the motion on the ground that Ricoh's delay in demanding arbitration after engaging in the judicial proceedings had constituted a waiver of its right to arbitrate.  Ricoh appeals.  We have jurisdiction under 9 U.S.C. § 16(a)(1) (permitting immediate appeal of denial of motions to compel arbitration and to stay proceedings pending arbitration).  We reverse the district court's order, and remand with instructions to grant Ricoh's motion to compel arbitration.

## I.    BACKGROUND

On September 18, 2000, Mr. Hill and Lanier Worldwide, Inc. (which later merged into Ricoh) executed an employment agreement (the Employment Agreement).  An arbitration clause in the agreement was separately initialed by both parties.[2]   There is no dispute that Ricoh assumed Lanier's rights and duties

[1]The complaint alleged federal-question jurisdiction under 28 U.S.C. § 1331 based on the SOX claim and diversity jurisdiction under 28 U.S.C. § 1332.

[2]The provision reads:

If a legally cognizable dispute arises out of or relates to this Agreement or the breach, termination, or validity hereof, or the compensation, promotion, demotion, discipline, discharge or terms and conditions of employment of [Hill], and if said dispute cannot be resolved through direct discussions, the parties voluntarily agree to settle the dispute by binding arbitration . . . .  The arbitration shall proceed in accordance with the Employment Dispute Resolution

(continued...)

under the Employment Agreement.  When Lanier merged into Ricoh, Mr. Hill and

Ricoh entered into a Retention Bonus Agreement on March 20, 2007.  Under that

agreement, which contained no arbitration provision, Mr. Hill was to be paid a

$20,000 bonus if he maintained his employment with Ricoh through September

30, 2007, and satisfied other specified conditions.

Ricoh terminated Mr. Hill on October 16, 2007.  On December 31 he filed a

complaint with the Occupational Safety and Health Administration (OSHA),

alleging that he had been fired in retaliation for reporting evidence of fraud.

---

[2](...continued)
Rules of the [American Arbitration Association] in effect on the date
of the demand for arbitration . . . .  Disputes subject to binding
arbitration pursuant to this section include all tort and contract
claims as well as claims brought under all applicable federal, state or
local statutes, laws, regulations or ordinances, including but not
limited to, Title VII of the Civil Rights Act of 1964, as amended; the
Family and Medical Leave Act; the Americans with Disabilities Act;
the Rehabilitation Act of 1973, as amended; the Fair Labor Standards
Act of 1938, as amended; the Age Discrimination in Employment
Act, as amended; the Equal Pay Act; the Civil Rights [Act] of 1866,
as amended; and the Employee Retirement Income Security Act of
1974.  Disputes subject to binding arbitration pursuant to this section
also include claims against [Lanier's] parent and subsidiaries, and
affiliated and successor companies . . . .  Each party shall pay for
his/her/its own fees and expenses of arbitration except that the cost
of the arbitrator and any filing fee exceeding the applicable filing fee
in federal court shall be paid by [Lanier]; provided, however, that all
reasonable costs and fees necessarily incurred by any party are
subject to reimbursement from the other party at the discretion of the
arbitrator.  This arbitration provision shall not apply to any claim
arising in a state that bars or prohibits the arbitration of such claims.

Aplt. App. at 90.

OSHA dismissed the action. Although ruling that Mr. Hill had engaged in activities that were protected under SOX and that Ricoh had known of the activities, it found that the activities had not been a factor in his termination.

On November 3, 2008, Mr. Hill filed suit alleging that his termination violated SOX and Kansas common law. Ricoh answered on December 4. The court set trial for March 1, 2010, and set summer 2009 deadlines for completion of alternate dispute resolution (ADR) and completion of discovery. On April 3, 2009, a week after Mr. Hill had provided Ricoh with his initial disclosures under Fed. R. Civ. P. 26(a)(1) and had served Ricoh with his first request for production, Ricoh moved to stay the case and compel arbitration.

Mr. Hill responded that arbitration was inappropriate on several grounds, including (1) the Employment Agreement had been superseded by the Retention Bonus Agreement, (2) the arbitration clause did not guarantee that his rights under SOX would be vindicated in arbitration, and (3) Ricoh had waived its right to arbitrate by its conduct in the dispute, including its failure to raise arbitration as an affirmative defense in its answer. The district court rejected Mr. Hill's supersession argument but ruled that Ricoh had waived its right to arbitration. It did not address Mr. Hill's SOX argument.

On appeal Ricoh argues that the district court erred in holding that it had waived its right to arbitrate. Mr. Hill contends that the district court's waiver decision was correct; and alternatively he argues that the court's decision can be

affirmed on the following grounds:  (1) that Ricoh waived its right to arbitration by failing to raise the issue as an affirmative defense, as required by Fed. R. Civ. P. 8(c)(1); (2) that the Employment Agreement was superseded by the Retention Bonus Agreement; and (3) that arbitration may not vindicate his rights under SOX.  After some preliminary remarks on the Federal Arbitration Act, we address waiver and then turn to Mr. Hill's supersession and SOX arguments.

## II.    DISCUSSION

### A.    The Federal Arbitration Act (FAA)

The FAA provides that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The purpose of the Act is "to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate."  *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 451 (4th Cir. 1997) (internal quotation marks omitted).  The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Section 3 of the Act, 9 U.S.C. § 3, obliges courts to stay litigation on matters that the parties have agreed to arbitrate; and Section 4, 9 U.S.C. § 4, authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the

underlying dispute. *See generally Moses H. Cone*, 460 U.S. at 24–27 (discussing scope and operation of FAA).

## B.      Waiver

The district court ruled that Ricoh had waived its right to arbitration by its delay in demanding arbitration until after it had participated in the court litigation for several months. Mr. Hill argues that we should affirm this ruling, and alternatively he argues that Ricoh waived its right to arbitration by not raising that claimed right in its answer to the complaint. We quickly dispose of this alternative argument and then address the district court's ruling.

### 1.      Failure to Raise Arbitration in Answer

Mr. Hill contends that Ricoh forfeited its right to demand arbitration by not asserting that right as an affirmative defense in its answer to his complaint. He relies on Fed. R. Civ. P. 8(c)(1), which states: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . arbitration and award."

Mr. Hill's argument is based on a misunderstanding of the term *arbitration and award*. The defense set forth in Rule 8(c)(1) is not that the claim should be arbitrated rather than adjudicated in court; it is that the claim has already been resolved by an award in arbitration. *See Forms, Inc. v. Am. Standard, Inc.*, 550 F. Supp. 556, 557 (E.D. Pa. 1982) (party seeking arbitration did not waive its right to arbitrate by not raising it as a defense in its answer), *aff'd,* 725 F.2d 667

(3d Cir. 1983) (unpublished table decision); *Mapes v. Chevron USA Prods Co. a Div. of Chevron U.S.A., Inc.*, 237 F. Supp. 2d 739, 745 (S.D. Tex. 2002) (same); *Lee v. Grandcor Med. Sys., Inc.*, 702 F.Supp. 252, 254 (D. Colo. 1988) (same); 5 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1270 at 562 (3d ed. 2004) (arbitration-and-award provision in Rule 8(c)(1) applies only if "the dispute has already been resolved by an arbitration and award."). Thus, Ricoh was not required by Rule 8(c)(1) to demand arbitration in its answer.

### 2. Waiver by Delay in Demanding Arbitration

We now address the ground on which the district court denied Ricoh's motion to compel arbitration. Mr. Hill argues that Ricoh waived its right to arbitration by participating in the court litigation for several months after answering the complaint. The historical facts are not disputed. Therefore we review de novo the district court's denial of Ricoh's motion, applying the same legal standard that the district court should apply. *See MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*, 886 F.2d 1249, 1259–60 & n.5 (10th Cir. 1989). We summarize the events in the litigation, then turn to the governing law, and conclude with our application of the law to the facts before us.

### a. Court Proceedings

Mr. Hill filed suit on November 3, 2008. Ricoh answered on December 4. On January 27, 2009, a magistrate judge set a scheduling conference for March 18, 2009, and ordered the following:

> Pursuant to Fed. R. Civ. P. 26(f), no later than March 4, 2009, the parties, in person and/or through counsel, shall confer to discuss the nature and basis of their claims and defenses, to discuss the use of mediation or other methods of alternative dispute resolution (ADR), to develop a proposed discovery plan, and to make or arrange for the disclosures required by Fed. R. Civ. P. 26(a)(1).

Aplee. Supp. App. at 7 (Initial Order Regarding Planning and Scheduling at 1, *Hill v. Ricoh*, No. 08-2548-KHV-DJW (D. Kan. Jan. 27, 2009)). On March 19 the court issued a scheduling order setting the deadline for completion of ADR at June 10, 2009; the deadline for completion of discovery at September 18, 2009; and the trial for March 1, 2010. The order also instructed each party to make a good-faith effort to settle and to provide the court by April 10, 2009, with a report summarizing the party's settlement efforts.

On March 27, 2009, Mr. Hill served a request for production of documents and both parties served their initial disclosures under Fed. R. Civ. P. 26(a)(1). A week later, on April 3, 2009, Ricoh moved to stay the case and compel arbitration. The district court denied the motions.

### b. Waiver of Arbitration in General

This circuit's leading opinion on waiver of the right to arbitrate is *Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado*,

614 F.2d 698 (10th Cir. 1980). On a prior appeal in that case, we had held that a party, "because of conduct before the court, . . . may be deemed [to be] prevented on the basis of some equitable principle from asserting a right to arbitration," *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 535 F.2d 598, 604 (10th Cir. 1976); and we had remanded to the district court to determine whether the Carpenters District Council (the union) had waived its arbitration rights. The district court found waiver and the union appealed. Affirming the decision below, we stated that "the right to arbitration, like any other contract right, can be waived." *Reid Burton*, 614 F.2d at 702. But, we continued, "[t]here is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case . . . ." *Id*. We noted several factors useful in making the assessment. These were later summarized as follows in *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988):

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

(quoting *Reid Burton*, 614 F.2d at 702) (brackets in original). Of course, our listing these factors—which we will call the *Peterson* factors—was not intended to suggest a mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails. Nor were we even suggesting that the list of factors is exclusive. Rather, these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration. A review of those principles will assist in resolving this case.

To begin with, a party should not be permitted to demand arbitration when it has previously waived its right to arbitrate in the narrow sense of waiver typically used in the criminal-law context, where a waiver is an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). A party's conduct may evince such an intentional relinquishment. Consider the facts alleged in *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1005 (9th Cir. 2005). After Dillard's fired Brown, she filed a notice of intent to arbitrate a wrongful-termination claim and paid her share of the filing fee. Dillard's did not reply to multiple requests from the American Arbitration Association (AAA) for information. *See id.* at 1008–09. For more than two months Brown attempted to contact Dillard's about its silence; but Dillard's refused to arbitrate. Brown then filed suit in court, at which point Dillard's moved to compel arbitration. *See id.* at 1009. In our view, one could

-10-

reasonably conclude that Dillard's had waived its right to arbitrate in the narrow sense of waiver. Expressing this in terms of the first *Peterson* factor, Dillard's actions were so "inconsistent with the right to arbitrate," *Peterson*, 849 F.2d at 467, that they showed that it had intentionally relinquished its contractual right to arbitration. (*Peterson* factor (4)—filing a counterclaim without seeking a stay for arbitration—may also indicate an intentional relinquishment of the right to arbitration.)

But *Reid Burton* and *Peterson* hardly limit the concept of waiver to intentional relinquishment of a known right. Indeed, *Reid Burton* affirmed the determination of waiver in that case even though the district court had explicitly stated that it could not tell whether the conduct at issue was intentional or negligent. *See Reid Burton*, 614 F.2d at 701.

An important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process. An instructive example is *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 919 (8th Cir. 2009), which concerned payday-loan agreements containing mandatory arbitration clauses. The class-action plaintiffs' complaint included one count asking the court to declare the arbitration clauses invalid because they were unconscionable and six counts challenging Advance America's various lending practices. Advance America moved to dismiss the complaint on several grounds. *See id.* "In the last sentence of its brief, Advance

-11-

America purported to 'reserve[ ] the right' to enforce the arbitration clauses in Plaintiffs' loan agreements, if the court denied its motion to dismiss." *Id.* After the district court rejected the motion to dismiss with respect to five of the lending-practices counts, Advance America moved to stay the case and compel arbitration. *See id.* at 920. The district court dismissed the motion, and Advance America appealed. Noting that Advance America, in seeking a decision on the merits on each count, had sought "an immediate and total victory in the parties' dispute," the Eighth Circuit said that Advance America "wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration." *Id.* at 922 (internal quotation marks omitted). It agreed with the district court that "'want[ing] to play heads I win, tails you lose . . . is the worst possible reason' for [a party's] failing to move for arbitration sooner than it did." *Id.* Thus, although Advance America had not intentionally relinquished its right to arbitration, to send the case to arbitration would allow manipulation of the judicial process.

*Khan v. Parsons Global Services, Ltd.*, 521 F.3d 421 (D.C. Cir. 2008), is a similar case. In response to Khan's complaint, "Parsons filed a single motion to dismiss or, alternatively, for summary judgment or to compel arbitration." *Id.* at 424. The district court granted summary judgment, and the D.C. Circuit reversed. *See id.* On return to the district court Parsons successfully moved to compel arbitration. *See id.* The D.C. Circuit again reversed. It stated that a summary

-12-

judgment motion by its nature "goes to the merits of the case," *id.* at 426 (internal quotation marks omitted), and that Parsons thus had made "a conscious decision to have the substance of the Khans' claims decided by a court," *id.* at 427 (ellipses, brackets, and internal quotation marks omitted).  The appellate court did not wish to "encourage parties to attempt repeat litigation of merits issues not resolved to their satisfaction, undermining the policy that arbitration may not be used as a strategy to manipulate the legal process."  *Id.* (internal quotation marks omitted).

A court may look to several of the *Peterson* factors in finding waiver on the ground that ordering arbitration would permit a party to manipulate the judicial process—for example, by allowing it to take a mulligan if the court proceeding is progressing unfavorably or by allowing it to use the courts to obtain discovery unavailable in arbitration.  Evidence of manipulation could include a delay in suggesting arbitration until substantial discovery has been completed (which may be considered under *Peterson* factors (2) and (5)) or until the eve of trial (factor (3)).

Another important consideration is maintenance of the combined efficiency of the public and private dispute-resolution systems.  *See Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 223 (1st Cir. 1995) ("[n]either efficiency nor economy [would be] served" by allowing party to invoke its right to arbitrate after refusing to arbitrate, permitting default judgment to be rendered against it in

a foreign jurisdiction, and invoking its arbitration agreement only when judgment holder sought judicial enforcement of the foreign judgment); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) ("Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution.")  Three of the *Peterson* factors—(2) substantial progress in the litigation, (3) an imminent trial, and (5) substantial use of discovery procedures—can be significant in deciding whether the court should find waiver because of the inefficiencies that would result from ordering arbitration.

The final consideration in waiver analysis is prejudice to the party opposing arbitration—the sixth *Peterson* factor.  *See Peterson*, 849 F.2d at 468.  Other circuits agree on the importance of showing prejudice as an element of waiver. *See, e.g.*, *Brown*, 430 F.3d at 1013 ("[T]he delay and costs incurred by Brown are prejudicial for the purpose of waiver analysis.")  *Com-Tech Assocs. v. Computer Assocs. Intern., Inc.*, 938 F.2d 1574, 1578 (2d Cir. 1991) ("[T]he contractual right to arbitration has been waived because of the prejudice the opposing parties have suffered as a result of the defendants' delay in seeking arbitration."); *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1544 (11th Cir. 1990), (party waived right to arbitrate because "[s]ignificant prejudice to Plaintiff's legal position may be inferred from the extent of discovery conducted in this case"); *see also* Ian R.

MacNeil, Richard E. Speidel, & Thomas J. Stipanowich, 2 Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act § 21.3.2 at 21:27 (1999) (describing prejudice as "The Key to Waiver").

The burden of persuasion lies with the party claiming that the right to demand arbitration has been waived. *See Peterson*, 849 F.2d at 466 ("A party asserting a waiver of arbitration has a heavy burden of proof."). And in assessing whether that burden has been met, we give substantial weight to the "strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488 (10th Cir. 1994); *see Moses H. Cone*, 460 U.S. at 24 ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.")

### c.    Application to this Case

Assessing the specifics of the case before us, we hold that there was no waiver. True, Ricoh did not demand arbitration until four months after answering the complaint. But that length of time in itself does not establish waiver. This circuit has no published opinion ruling that there was waiver because of the delay in making a demand for arbitration when the delay was four months or less after the answer. *Cf. Metz*, 39 F.3d at 1486 (defendant moved to compel arbitration three weeks after complaint was filed, but it waived the right to arbitrate certain claims by its later conduct in the litigation.) Other circuits have held that there

was no waiver despite delays of four months or more after answering the complaint.  *See, e.g.*, *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 203, 205 (4th Cir. 2004) (seven-month delay; four-month delay after party learned of arbitration agreement); *J & S Const. Co., Inc. v. Travelers Indem. Co.*, 520 F.2d 809, 809–10 (1st Cir. 1975) (13-month delay after suit filed).

The critical question is what was happening in this litigation during the four months between the answer to the complaint and the demand for arbitration. The answer is, very little.  The most important activity shown by the record was the magistrate judge's setting the schedule for the litigation.  When Ricoh requested an order compelling arbitration, the trial was not to take place for another 11 months, discovery could continue for another five-and-a-half months, and the deadline for completing ADR was still more than two months ahead.  The only discovery that had been initiated consisted of Mr. Hill's request for production of documents and the parties' disclosures under Rule 26(a)(1) (Mr. Hill asserts that he disclosed his witnesses, exhibits, and itemization of damages); both Mr. Hill's request and his disclosure were only a week before Ricoh's demand.

Mr. Hill has failed to show any substantial prejudice from Ricoh's delay in seeking arbitration.  To be sure, he may benefit from timely resolution of his claims, and arbitration proceedings could have begun four months earlier if Ricoh

had requested arbitration when it answered the complaint. But one would expect (and Mr. Hill has not suggested otherwise) that the dispute would still have been resolved in arbitration before the date set for trial (had Mr. Hill not opposed arbitration). Nor has he shown that he has been burdened by discovery significantly more than he would have been if the dispute had gone to arbitration at the outset. We note that the arbitration rules applicable at the time of Ricoh's demand would allow the arbitrator to order discovery. *See* AAA, Employment Arbitration Rules and Mediation Procedures, Rule 9 (2006) ("The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."). And those rules also require the parties to attend an arbitration management conference at which they must consider "the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues." *Id.* Rule 8(e). Mr. Hill has not satisfied his burden to show that the contents of his initial disclosures under Rule 26 would not likewise have to be disclosed in arbitration proceedings.

In *Patten Grading*, 380 F.3d at 200, the Fourth Circuit held that there had been no waiver despite more discovery than occurred in this case. The parties "exchanged written discovery, including interrogatories and requests for production of documents." *Id.* at 203. They also participated in court-ordered

mediation. Patten then received permission to add another claim, and discovery was reopened for another month. Only at that point did the opposing party, Skanska, move to stay the proceedings and compel arbitration. *See id.* The Fourth Circuit characterized the conduct of discovery as "minimal" and noted that there was no evidence that such discovery was unavailable in arbitration, or that Skanska had "gained a strategic advantage through its discovery requests." *Id.* at 206–07. *See also Williams v. Cigna Fin. Advisors Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) (the parties had "exchanged Rule 26 discovery"); Gabriel M. Wilner, 1 Domke on Commercial Arbitration § 19:07 at 10 (rev. ed. 2002) ("conducting discovery prior to seeking to compel arbitration does not constitute prejudice where the documents produced by discovery are also discoverable in arbitration")

We recognize that the prior conduct of discovery was a factor in finding waiver in our decision in *MidAmerica*; but discovery had actually been completed and a number of other factors (including completion of one trial) also supported waiver. *See MidAmerica*, 886 F.2d at 1261.

The minimal litigation activity before Ricoh demanded arbitration also compels the conclusion that granting Ricoh's demand would lead to minimal inefficiency (from duplication of effort in court and in arbitration) and would not result in any improper manipulation of the judicial process by Ricoh. And there is no evidence in the record that Ricoh intentionally and knowingly relinquished its right to demand arbitration.

Thus, the circumstances of this case, particularly in light of the federal policy favoring arbitration, convince us that the district court should not have found waiver and should have ordered arbitration and stayed judicial proceedings.

**C.    Supersession by Retention Bonus Agreement**

Mr. Hill's first argument for affirmance other than waiver is that the arbitration provision in the Employment Agreement is not enforceable because that agreement was superseded by the Retention Bonus Agreement, which has no arbitration provision.[3]  Although the FAA strongly favors enforcement of agreements to arbitrate, "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigavtion Co.*, 363 U.S. 574, 582 (1960).  Whether there is an enforceable contract to arbitrate is a matter of contract law to be decided by the court.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). State law governs.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain

[3]Mr. Hill's appellate brief notes that in April 2007, after execution of the Retention Bonus Agreement, Ricoh presented Mr. Hill with a proposed employment agreement containing an arbitration clause that explicitly encompassed disputes under SOX (which had been enacted after execution of the Employment Agreement), but he refused to sign.  We see no legal significance to Mr. Hill's refusal; and his brief suggests none.

matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). The district court and the parties have relied on Kansas law in addressing the contract-law issues before us; and we have no reason to believe that any other state's law is applicable. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–63 & n.9 (1995).

Under Kansas law a "written contract may be varied, modified, waived, annulled, or wholly set aside by any subsequent executed contract." *Owens v. City of Bartlett, Labette County*, 528 P.2d 1235, 1240 (Kan. 1974). If two successive contracts are in conflict, the later supersedes the earlier one. *See Fleetwood Enters., Inc. v. Coleman Co., Inc.*, 161 P.3d 765, 774 (Kan. Ct. App. 2007). The parties do not dispute the historical facts. Therefore, we review de novo the district court's decision that the Retention Bonus Agreement did not supersede the Employment Agreement. *See Isaac v. Temex Energy, Inc. (In re Amarex)*, 853 F.2d 1526, 1529–30 (10th Cir. 1988).

In our view, the arbitration clause of the five-and-a-half-page Employment Agreement survived the execution of the two-page Retention Bonus Agreement on March 20, 2007. The Retention Bonus Agreement had a limited purpose—to encourage Lanier employees to remain with Ricoh during a transition period. It was not a "Transition Employment Agreement," but a supplement to the already

effective Employment Agreement. A comparison of the terms of the two agreements makes this clear.

The Retention Bonus Agreement required Mr. Hill to remain with Ricoh until September 30, 2007, unless Ricoh deemed his services unnecessary before that time. If he were retained by Ricoh beyond that date, the Retention Bonus Agreement would "expire and be of no force and effect." Aplt. App. at 92.[4] Otherwise, however, he would be paid a $20,000 bonus upon termination of employment once he signed a release of all claims against Ricoh and Lanier. He would not receive the bonus, however, if he were terminated for cause; and *For Cause* is defined in the agreement (to include, among other things, breach of the obligations in the agreement's "Confidentiality" paragraph).

To be sure, the Retention Bonus Agreement governs certain aspects of Mr. Hill's relationship with Ricoh. But it does not explicitly state that his earlier Employment Agreement is nullified, unlike the Employment Agreement, which states that "[a]ll prior contracts, agreements, or promises of any kind relating to the employment relationship of the parties are hereby canceled and discharged and are of no further effect whatsoever," *id.* at 91. Nor is such nullification implicit. On the contrary, the Retention Bonus Agreement's failure to mention some matters addressed in the Employment Agreement and its treating other

[4]Although Mr. Hill's employment with Ricoh continued until October 16, 2007, Ricoh has not argued that the Retention Bonus Agreement therefore expired.

-21-

matters in significantly less detail suggests that the parties would continue to look to the Employment Agreement insofar as it was not inconsistent with the Retention Bonus Agreement.

For example, the Employment Agreement sets forth Mr. Hill's territory, and it requires him to "hold in trust all money collected for [Ricoh] and . . . report or remit such money to [Ricoh] within forty-eight (48) hours of the date of such collection." *Id.* at 87. Because the Retention Bonus Agreement says nothing about territory or handling of funds, and because these are undoubtedly matters of importance to the employment relationship, one can infer that the Employment Agreement still covers these matters.

As for subjects treated in both agreements, Mr. Hill suggests that the Confidentiality paragraph of the Retention Bonus Agreement replaces the one-and-a-half pages devoted to trade secrets and the like in the Employment Agreement. But we find that implausible. The first two sentences of the Confidentiality paragraph state that the terms of the agreement must be kept confidential. The next two sentences say: "Additionally, you are required to keep confidential any trade secret, business or proprietary information, which you acquired during your employment with the Company. This is intended to cover any information of a nature not normally disclosed by the Company to the general public." Aplt. App. at 93. The paragraph then concludes with a sentence warning that Mr. Hill can be terminated immediately for breach of the agreement. We can

think of no reason why Ricoh would have wanted to, or agreed to, replace the Employment Agreement's detailed language regarding confidentiality by the summary treatment in the Retention Bonus Agreement. The common-sense conclusion is that the purpose of the Confidentiality paragraph in the Retention Bonus Agreement was not to replace the Employment Agreement provisions but to specify that breach of confidentiality would forfeit the $20,000 bonus and to make the terms of the Retention Bonus Agreement confidential.

Similarly, the Employment Agreement is more specific than the Retention Bonus Agreement regarding the terms of compensation (the Retention Bonus Agreement addresses only the bonus and mentions the severance-pay policy) and enumerates company policy manuals that must be obeyed.

In short, there is every reason to conclude that the Retention Bonus Agreement was intended to operate within the legal context of the earlier Employment Agreement. In particular, the arbitration clause of the Employment Agreement is not "in conflict" with the Retention Bonus Agreement and therefore is not superseded by it. *Fleetwood Enters.*, 161 P.3d at 774.[5]

### D. SOX Enforcement

---

[5]If Mr. Hill had signed the release necessary to obtain his $20,000 bonus, perhaps the arbitration clause of the Employment Agreement would have been mooted (because there would be no dispute to arbitrate); but Mr. Hill does not raise this argument.

Finally, Mr. Hill claims that the arbitration clause in the Employment Agreement is unenforceable in this dispute because he may not be able to vindicate his rights under SOX through arbitration in accordance with the clause. We disagree.

SOX forbids employers from retaliating against "[w]histleblower" employees who report fraud in certain circumstances. 18 U.S.C. § 1514A. A discharged employee who prevails in an enforcement action is entitled to reinstatement, lost wages, and reimbursement of other expenses, including reasonable attorney fees. *See id.* § 1514A(c)(2). Mr. Hill's district-court complaint claims that he was fired in violation of SOX after he reported the fraudulent double booking of sales and other misconduct by fellow employees.

Mr. Hill's specific concerns about arbitration are that he may not be awarded attorney fees if he prevails, and he may be ordered to pay attorney fees if he loses. He points to the following provision in the arbitration clause:

> Each party shall pay for his/her/its own fees and expenses of arbitration except that the cost of the arbitrator and any filing fee exceeding the applicable filing fee in federal court shall be paid by the Company; *provided, however, that all reasonable costs and fees necessarily incurred by any party are subject to reimbursement from the other party at the discretion of the arbitrator.*

Aplt. App. at 90 (emphasis added). "The mere possibility that a Plaintiff may be unable to vindicate his or her statutory rights," he argues, "is sufficient to render a contractual arbitration agreement unenforceable." Aplee. Br. at 39–40.

-24-

Mr. Hill relies on two appellate decisions to support his argument, *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999), and *Randolph v. Green Tree Financial Corp.-Alabama*, 178 F.3d 1149 (11th Cir. 1999). In the first case, Shankle signed an arbitration agreement as a condition of his ongoing employment. *See Shankle*, 163 F.3d at 1232, 1233, 1235. The agreement covered all claims between the parties, including federal statutory claims, and explicitly required that Shankle pay one-half of the arbitrator's fees. *See id.* at 1232. When Shankle filed a discrimination suit, B-G invoked the arbitration agreement. We noted that agreements requiring arbitration of statutory claims are enforceable if the arbitral forum is an effective alternative to a judicial one. *See id.* at 1231, 1233–34. For Shankle to pursue arbitration, however, he would have had to pay an arbitrator between $1,875 and $5,000, which he could not afford. Thus, he was effectively unable to vindicate his federal statutory rights. We held that the district court correctly declined to compel arbitration. *See id.* at 1234–36. In *Randolph* the Eleventh Circuit held that an arbitration provision was unenforceable because it was silent regarding the payment of arbitration expenses, thus posing an unacceptable risk that Randolph would not be able to afford to vindicate her federal statutory rights. *See Randolph*, 178 F.3d at 1157–58.

We reject Mr. Hill's argument. Unlike in *Shankle*, nothing in the Employment Agreement's arbitration clause requires the arbitrator to deny

Mr. Hill his rights under SOX. The clause gives the arbitrator discretion to award him attorney fees if he prevails on his SOX claim. And assuming, without deciding, that Mr. Hill is correct that SOX prohibits imposing attorney fees on an unsuccessful plaintiff, nothing in the arbitration clause requires the arbitrator to compel him to pay Ricoh's attorney fees if he loses. Thus, the arbitrator has full authority to grant Mr. Hill the same SOX relief that he would receive in court.

*Randolph* would be more difficult for us to distinguish, but we need not bother. It was reversed by the Supreme Court in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). The Court rejected Randolph's argument that the risk of her having to pay high arbitration costs prevented her from vindicating her statutory rights. *See id.* at 90. The Court held that in light of the "liberal federal policy favoring arbitration agreements," such risk was "too speculative to justify the invalidation of an arbitration agreement" *Id.* at 91 (internal quotation marks omitted). It said: "[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

Here, too, Mr. Hill's fear that his SOX rights would not be vindicated is mere speculation. This fear is based on an unsupported assumption that the arbitrator will be hostile to the substantive rights created by SOX. As the Supreme Court has made clear, such an assumption is inappropriate. *See 14 Penn*

*Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1470–71 (2009); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989) (enforcing agreement to arbitrate claims under Securities Act of 1933; rejecting the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985) (agreement to arbitrate Sherman Act claim is enforceable; "we . . . reject the proposition that an arbitration panel will pose too great a danger of innate hostility to the constraints on business conduct that antitrust law imposes.")

Accordingly, SOX does not render the arbitration clause unenforceable in this case.

## III.  CONCLUSION

We REVERSE the district court's order denying Ricoh's motion to compel arbitration and REMAND with instructions to grant Ricoh's motion and order the parties to arbitrate.