**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 16, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT
_____

D. RAY STRONG, as Liquidating Trustee
of the Consolidated Legacy Debtors
Liquidating Trust, the Castle Arch
Opportunity Partners I, LLC Liquidating
Trust and the Castle Arch Opportunity
Partners II, LLC Liquidating Trust,

      Plaintiff - Appellee,

v.

WILLIAM H. DAVIDSON,

      Defendant - Appellant,

and

JEFF AUSTIN; AUSTIN CAPITAL
SOLUTIONS; ROBERT CLAWSON;
HYBRID ADVISOR GROUP,

      Defendants.

No. 17-4085
(D.C. No. 2:14-CV-00788-TC-EJF)
(D. Utah)

_____

# ORDER AND JUDGMENT[*]
_____

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Four months after a multi-party arbitration proceeding was terminated because some of the other defendants did not pay their deposits, William H. Davidson moved to stay the court proceedings and to compel arbitration of the claims against him. The district court found that Mr. Davidson waived his right to arbitrate and denied his motions. Exercising jurisdiction under 9 U.S.C. § 16(a)(1),[1] we affirm.

## I.    Background

This case has been lingering for years. A real estate investment company and some of its special-purpose subsidiaries filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Utah in 2011. The bankruptcy court appointed D. Ray Strong ("the Trustee") to act as the post-confirmation estate representative of several debtors and as the liquidating trustee of several trusts. The Trustee filed this lawsuit on behalf of those debtors and trusts in October 2014— alleging that certain officers and directors engaged in securities fraud and other misconduct, which led to the loss of millions of dollars of investors' funds. The individual defendants include Mr. Davidson, Jeff Austin, and Austin Capital Solutions.

---

[1] The Federal Arbitration Act authorizes an interlocutory appeal of an order refusing to stay court proceedings pending arbitration or to compel arbitration. *See* 9 U.S.C. § 16(a)(1)(A), (B) ("An appeal may be taken from . . . an order . . . refusing a stay of any action under section 3 of this title . . . [or] denying a petition under section 4 of this title to order arbitration to proceed . . . ."); Jacks v. CMH Homes, Inc., 856 F.3d 1301, 1304 (10th Cir. 2017).

In January 2015, Mr. Austin and Austin Capital Solutions (the Austin defendants) filed a motion to stay the litigation and to compel arbitration of two of the nineteen claims. This motion spurred limited discovery as to which investors signed an agreement that incorporated an arbitration clause, which in turn led the Austin defendants to move to compel arbitration of additional claims. Ultimately, the district court sent the entire case to arbitration in August 2015, without opposition from the Trustee. The parties selected the American Arbitration Association (AAA) to arbitrate the dispute. In October 2015, the Trustee filed the demand for arbitration against a number of defendants, who were apparently separated into five groups for financial purposes, and paid the requisite $9,100 filing fee. AAA appointed a panel of three arbitrators.

On August 9, 2016, AAA advised that it had billed $3,787.50 per defendant (or group of defendants) for "an initial arbitrator compensation and expenses deposit" due on August 23. Aplt. App. at 293. All parties including Mr. Davidson paid their deposits, except for the Austin defendants (the parties who first sought to compel arbitration) and the group of defendants referred to as the "Child Van Wagoner" associates. AAA followed up with a notice on October 18, warning that if the missing deposits were not paid by October 25, it would tell the arbitrators which parties had not paid and would present them with "a number of options," including:

> ❖ The arbitrators may proceed with work on this matter, without full deposits. As arbitrator compensation and expenses are incurred, the AAA will distribute the share of payment owed from the deposits received and will continue our efforts to collect any outstanding balance.

3

❖ The arbitrators may choose to resign, in which case the AAA will fill the vacancy(s).

❖ The arbitrators may suspend or terminate the case.

Alternatively, and in accordance with the Commercial Arbitration Rules, any party may make a deposit on behalf of the non-paying parties to avoid any possible interruption of the case. While we would prefer not to make this request of a party that has met its deposit obligations under the rules, the burden of funding the process falls on the parties and neither the AAA nor the arbitrators can cover these costs. The paying party(s) then may make the repayment of this deposit part of its claim to the arbitrators.

*Id.* at 296. The letter encouraged the parties to contact AAA with any questions.

No money was forthcoming, so AAA announced the suspension of the arbitration in a letter dated November 21. Still, AAA gave the parties one last chance—setting December 7 as the final payment deadline and reminding them of the arbitrators' ability to terminate the matter for nonpayment. Through a December 9 email, AAA extended that deadline to December 13, adding: "As a reminder, any party may make a payment on behalf of another party in order to prevent this matter from being terminated. Please let me know if there are questions." *Id.* at 303. The arbitration was officially "dismissed due to non-payment of fees" on December 19, 2016. *Id.* at 307. AAA issued refund checks for "any unused compensation deposits." *Id.*

The Trustee returned to district court and asked for the stay to be lifted—a request that was granted with no opposition from Mr. Davidson. The Trustee also sought to consolidate three interrelated cases because a multi-party arbitration was no longer an option. Meanwhile, the district court held a joint status conference in

4

January 2017, at which it ordered the parties to answer or otherwise respond to the complaint by March and set the case for a three-week trial beginning in January 2018. In addition, the parties participated in the Fed. R. Civ. P. 26(f) discovery planning meeting and Mr. Davidson filed a brief opposing the Trustee's motion to consolidate. Mr. Davidson did not oppose the litigation or express any desire to return the case to arbitration until he moved for a stay and to compel arbitration of the claims against him on March 20, 2017. The district court found that he waived his right to arbitrate under the circumstances and denied his motions. This appeal followed.

## II. Analysis

Equitable principles may prevent a party from asserting a right to arbitration: "[T]he right to arbitration, like any other contract right, can be waived." *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980). The party asserting waiver bears the burden of persuasion. *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 775 (10th Cir. 2010). That burden is a "heavy" one, *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 466 (10th Cir. 1988)— particularly because "we give substantial weight to the strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration," *Hill*, 603 F.3d at 775 (internal quotation marks omitted). Even so, we have not hesitated to uphold a district court's finding of waiver under appropriate circumstances.

5

"There is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case . . . ." *Reid Burton*, 614 F.2d at 702. We have outlined six factors that courts should weigh in considering whether a party waived its right to arbitration:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Peterson*, 849 F.2d at 467-68 (alteration in original) (internal quotation marks omitted). This list is not exclusive, and courts should not mechanically apply the factors. *Alwert v. Cox Commc'ns, Inc.* (*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*) (*Cox II*), 835 F.3d 1195, 1205 (10th Cir. 2016). Other considerations are important too, such as "maintenance of the combined efficiency of the public and private dispute-resolution systems" and "whether the party now seeking arbitration is improperly manipulating the judicial process." *Hill*, 603 F.3d at 773-74; *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (describing the "essential virtue" of arbitration as "resolving disputes straightaway" (internal quotation marks omitted)).

Where (as here) the historical facts are not disputed, the district court's denial of a motion to compel arbitration based on waiver is subject to de novo review. *Hill*,

6

603 F.3d at 771. Because we "apply[] the same legal standard that the district court should apply," *id.*, we turn our attention to the *Peterson* factors and their progeny. We find the first and sixth factors to be the most compelling here.

To start, Mr. Davidson's conduct is inconsistent with the right to arbitrate. He urges us not to penalize him for his "apparent" and "[a]lleged [i]naction" once it became clear that the original arbitration was failing. Aplt. Opening Br. at 10. After all, he cooperated with the arbitration order and had "no reason . . . to believe . . . that he wouldn't be able to assert his right to arbitration and pursue his own motion to compel down the road." *Id.* at 8; *see also id.* at 14 ("Davidson did nothing that would imply abandonment. He paid his share of the arbitrator's fee, participated in selecting an arbitration panel and participated in pre-hearing conferences.").

But waiver can occur outside of an intentional relinquishment of the right to arbitrate; it can be implied from a party's actions or even inaction. *See BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1178 (10th Cir. 2017) ("The *Peterson* factors analyze a party's conduct—that is, that party's external actions showing that it waived its right to demand arbitration even if it did not subjectively intend to do so."); *see also Peterson*, 849 F.2d at 468. In *Peterson*, for example, we concluded that the appellant "waived arbitration [of its state law claims] due to its *inaction*," 849 F.2d at 467 (emphasis added). Similarly, we focused on omissions and found waiver where a party "improperly sat on its right to arbitrate" in *Healy v. Cox Communications, Inc.* (*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*) (*Cox I*), 790 F.3d 1112, 1120 (10th Cir. 2015).

7

Furthermore, common sense dictates that a party who intends to exercise his right to arbitrate would object or do *something* to try to preserve an existing arbitration that is in danger of being terminated—especially where the arbitrator repeatedly invites the parties to reach out. Indeed, we have instructed that a party considering arbitration "must do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration"—even if that means just mentioning the prospect of arbitration. *Cox I*, 790 F.3d at 1119 (internal quotation marks omitted); *see also Reid Burton*, 614 F.2d at 703 (referencing a party's "duty" to "insist[] upon or demand[] immediately" the enforcement of an arbitration provision). This practice "ensure[s] a more expedient and efficient resolution" of the dispute and "prevent[s] . . . improper gamesmanship." *Cox I*, 790 F.3d at 1119.

What could Mr. Davidson have done here? While he was understandably reluctant to pay his co-defendants' fees, he could have done so and sought repayment later. AAA's October 18 notice offered an assurance that "[t]he paying party(s) [could] make the repayment of this deposit part of its claim to the arbitrators." Aplt. App. at 296. Alternatively, he could have requested relief or sanctions under Rule 57 or Rule 58 of AAA's Commercial Arbitration Rules and Mediation Procedures, respectively, which were incorporated into the parties' arbitration agreement.[2]

---

[2] Rule 57 lists remedies for nonpayment of arbitrator compensation or administrative charges. Rule 58 details the arbitrator's ability to order appropriate sanctions (upon another party's request) when a party does not comply with its

(continued)

Although AAA cannot preclude a party from defending a claim or enter a default judgment against a non-paying party, such a request would have alerted AAA and the other parties of Mr. Davidson's desire to continue with the arbitration and might have helped the parties overcome the impasse. The district court hinted during the status conference that it could have ordered the parties to pay their fees. *See* Aplt. App. at 265 ("[W]e are stalled . . . with the arbitration. It looks like I am going to lift the stay. There is no choice other than perhaps order people to pay their fees.").

Instead, Mr. Davidson remained silent while the pending arbitration collapsed. His passive approach misled the Trustee, who posits that he might have acted differently had he known Mr. Davidson still intended to pursue arbitration. *See* Aplee. Br. at 16 (suggesting that he "could have either (1) paid Mr. Austin's share of the fees to preserve the Arbitration as to all parties; or (2) requested (just as Mr. Davidson could have done) to continue the Arbitration as to the Trustee and Mr. Davidson—the only parties who paid the fees").

Mr. Davidson's behavior also prejudiced the Trustee. We have described prejudice as "inherent unfairness—in terms of delay, expense, or damage to a party's legal position." *Cox II*, 835 F.3d at 1208-09 (internal quotation marks omitted). All three are implicated here. A second, partial arbitration would add further delay to a case that has dragged on for years because of initial procedural matters. It would

obligations under the Rules. "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA]." R-1(a), Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013).

9

require the Trustee—who spent a total of $12,880.50 on filing and arbitrators' fees for the first arbitration, less any amounts reimbursed—to incur similar additional fees. And it would frustrate the Trustee's legitimate goal of resolving related cases in one forum. When the Trustee agreed to arbitrate *all* claims, he made clear he was doing so "in the interest of reducing costs and maximizing the value of the Trusts." Aplee. App. at 42. Likewise, when the Trustee moved to consolidate related litigation after the arbitration was terminated, he stressed the importance of resolving claims "*in a single forum* . . . [to] bring order, efficiency, and common sense to these proceedings." *Id.* at 59. Although the Trustee now speculates on appeal that he *might* have been willing to proceed with the arbitration solely as to Mr. Davidson, *see* Aplee. Br. at 16, we agree with the district court that forcing the Trustee to "split litigation of similar, if not the same, issues between two venues" is "neither fair nor a good use of resources." Aplt. App. at 335-36.[3] To the contrary, it would contravene the "combined efficiency of the public and private dispute-resolution systems." *Hill*, 603 F.3d at 774.

The remaining factors are somewhat neutral or not relevant. As for factors (2) and (5), the parties have only partially invoked the litigation machinery and are admittedly toward the front end of litigation, with discovery to date limited to the arbitrability issue; thus, this case has not yet progressed much substantively. But this lack of progress cuts both ways. This dispute needs to be resolved expeditiously, and

---

[3] Mr. Davidson concedes this point but minimizes the burden imposed on the Trustee by calling it a matter of "convenience." Aplt. Reply Br. at 5.

the plan developed by the parties at the scheduling conference seems to present the most efficient path forward.  As for factor (3), Mr. Davidson did not request arbitration close to the trial date, but he did delay announcing his intent to arbitrate as explained above.  Finally, factor (4) is not relevant.

## III.   Conclusion

Mr. Davidson waived any right to arbitrate the claims against him.  We therefore affirm the district court's order denying his motion to stay the litigation and to compel arbitration.

Entered for the Court


Bobby R. Baldock
Circuit Judge