**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBERT LAMKIN, an individual;
RAY BIDENOST, an individual,

Plaintiffs-Appellees,

v.

MORINDA PROPERTIES WEIGHT
PARCEL, LLC, a Utah limited
liability company,

Defendant-Appellant.

No. 11-4022
(D.C. No. 2:10-CV-00852-BSJ)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.

---

Defendant Morinda Properties Weight Parcel LLC (Morinda) appeals from

a district court order denying its motion to dismiss or to stay and refer this action

to arbitration under Section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4.

We have jurisdiction under 9 U.S.C. § 16(a)(1), and review the district court's

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

ruling de novo, *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1218 (10th Cir. 2005).  For reasons explained below, we reverse and remand with directions to refer the parties' dispute to arbitration.  We also hold that Morinda is entitled to attorney fees and costs incurred in enforcing its right to arbitrate, and direct the district court to determine the appropriate amount on remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs contracted to purchase two condominiums to be built by Morinda, and paid $256,400 in earnest money to reserve the properties.  The two purchase contracts included a dispute resolution clause providing for a two-step process of formal mediation and (if necessary) binding arbitration:

> 15.  DISPUTE RESOLUTION.  The parties agree that any dispute arising prior to or after Closing, related to this Contract, whether based on a theory of tort, contract or warranty, shall first be submitted to mediation . . . .  *If mediation fails*, the parties agree that *all disputes arising out of or related to this Contract or the Property, whether based on a theory of tort, contract or warranty shall then be submitted to mandatory binding arbitration* which shall be conducted by the American Arbitration Association.  Nothing in this Section 15 shall prohibit any party from seeking . . . a judicial decree compelling arbitration or judicial enforcement of an arbitration award.

App. at 60-61, 72-73 (emphasis added).  The contracts required Morinda to substantially complete construction within twenty-six months, *id.* at 62, 74, but the deadline could be extended for certain contingencies, *id.* at 59-60, 71-72.  If Morinda defaulted, plaintiffs' "sole and exclusive remedies" were rescission of the contract and return of their earnest money.  *Id.* at 61, 73.

-2-

Eventually, delay in construction and disagreement over grounds for an extension of the deadline brought the parties into mediation, pursuant to the dispute resolution provision. When mediation failed to resolve the matter, plaintiffs did not commence arbitration proceedings but instead filed this diversity suit for breach of contract. Morinda moved in the alternative to dismiss the action or to stay it and compel arbitration. In response, plaintiffs argued that Morinda had waived its right to insist on arbitration when, through an email exchange, it initially agreed to accept service of plaintiffs' complaint.

When the matter came on for hearing, the district court expressed doubt about plaintiffs' waiver argument but interjected a different theory for rejecting arbitration: the provision specifying rescission and recovery of earnest money as buyers' exclusive remedy for seller's default nullified the arbitration provision. The court stated this point in two ways. First, it characterized arbitration as a "remedy" that, as such, was displaced by the exclusive-remedy provision when, as here, a buyer sued the seller for default. Second, it reasoned that the presence of what was, in essence, a liquidated-damages clause meant that there was nothing to arbitrate when a seller was in default. As to the existence of the default, the court proposed to resolve that issue itself.

Morinda vigorously objected to this reasoning at the hearing and in a later supplemental memorandum of law. It argued that arbitration is not a contractual remedy in the sense used in the exclusive-remedy provision but, rather, an agreed

upon process–substituting for litigation–to effectuate such remedies. Thus, to obviate arbitration by litigating the crux of a contract dispute (the seller's alleged default), as the court proposed to do, would replace arbitration with the very litigation it was meant to supplant. Plaintiffs submitted a short supplemental memorandum in response, seeking to bolster the court's analysis by citing several Utah cases referring to arbitration as a "remedy," though none did so to equate and subordinate an arbitration clause to an ordinary contractual-remedy provision and thereby allow litigation of an otherwise arbitrable dispute.

The district court issued a brief order denying Morinda's motion to compel arbitration. But in this order the court articulated yet another novel rationale for denying arbitration, based on its determination that no "dispute" existed to which the arbitration provision could attach. In essence, it held that to create a dispute sufficient to trigger arbitration, Morinda had to file a responsive pleading denying the allegation of breach/default in plaintiffs' complaint:

> The real estate purchase contracts between Plaintiffs and Defendant require arbitration of "all disputes arising out of or related to this Contract or Property, whether based on a theory of tort, contract or warranty . . . ." Thus, whether an issue is referable to arbitration hinges upon whether there is a dispute. Plaintiffs allege contractual default by the Defendant. Defendant does not admit, deny, or otherwise address this allegation in its pleadings. Absent a response on the question of contractual default, no dispute has yet been raised, and absent a dispute there can be no issue to refer[] to arbitration.

App. at 237-38 (citations to record omitted).

**ANALYSIS OF ARBITRABILITY**

Morinda challenges and plaintiffs defend both the reasoning articulated by the district court at the hearing (regarding the effect of the exclusive-remedy provision on the arbitration clause) and the rationale stated in the district court's order (regarding the need for a responsive pleading to create a dispute and thereby trigger the arbitration clause). We therefore address both points here. Morinda also contends that plaintiffs' argument for waiver of arbitration fails. Because the operative facts are undisputed, we address that issue as well.

**A. Lack of a Responsive Pleading and the Presence of a "Dispute"**

Neither the district court nor plaintiffs cited any authority holding that an arbitrable dispute does not exist unless and until the defendant files a responsive pleading in litigation. On the contrary, "[a] defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint," Jay A. Grenig, Alternative Dispute Resolution § 23:3 at 574 (3d ed. 2005)—as procedural summaries in arbitration cases uncontroversially reflect, *see, e.g.*, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 83 (2000); *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1270 (11th Cir. 2002).[1] And, as Morinda points out, requiring a party to file an answer denying material allegations in the

---

[1]    Indeed, cases involving motions to compel arbitration typically just note the filing of the motion in response to the complaint, without even mentioning the presence or absence of any responsive pleading.

complaint and asserting potential affirmative defenses–in short, formally and substantively *engaging in the merits of the litigation*–in order to enforce its right *not to litigate* is a non-sequitur.

Even leaving aside these general objections, plaintiffs' position is undercut by a more particularized consideration specific to the facts of this case. As noted above, the operative provision here contemplates a two-step dispute resolution process: a "dispute" is first presented for formal mediation and, if that fails, then the "dispute" is submitted to binding arbitration. App. at 60-61, 72-73. Pursuant to the terms of this provision, when the parties disagreed over whether Morinda had breached the contract, they brought the matter to formal mediation. Given that a "dispute" triggers both steps of the process, it is pure sophistry to maintain that there was no dispute to arbitrate, within the meaning of the operative provision, when mediation failed.

## B. Exclusive-Remedy Provision

Plaintiffs also attempt to defend the denial of arbitration on the basis of the district court's initial rationale—that the buyers' exclusive remedy of rescission and refund supplanted the "remedy" of arbitration in the event of a default by the seller on its contractual obligations. Once again, we have not been cited any authority, nor can we discern any persuasive reason, for holding that a provision requiring arbitration of breach-of-contract claims is nullified by the concomitant provision of an exclusive remedy in the event a breach is found. We agree with

-6-

Morinda that in such cases arbitration still has an obvious and crucial role to play–resolving the parties' dispute *over whether a breach occurred*–that is not in any way affected by the provision for a specified form of relief for the breach.

Plaintiffs' contrary position rests on two confusions. First, as reflected in the point just made, it glosses over the fact that liability and damages are distinct legal determinations. Even if an exclusive-remedy provision obviates the issue of appropriate relief, the antecedent determination of breach must be made. And it is no answer to this to say that the court can make that determination, thus leaving nothing to be arbitrated, when it is for the arbitrator, not the court, to resolve all issues, liability and damages alike, in disputes covered by the arbitration clause. Second, as touched on earlier, plaintiffs' citation to cases referring to arbitration as a "remedy" glosses over two different senses of that term. Arbitration may be termed a "remedy" in that it provides a remedial mechanism to rectify a breach, but it is not a "remedy" in that it remedies the breach itself (as rescission and refund do). One of the cases cited by plaintiffs characterizing arbitration as a remedy, *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475 (Utah 1986), clarifies that it is a remedy in the former sense: "[A]rbitration is a remedy . . . providing *a method* more expeditious and less expensive *for the resolution of disputes*." *Id.* at 479 (quoting *Lindon City v. Eng'rs Constr. Co.*, 636 P.2d 1070, 1073 (Utah 1981) (further quotation omitted)).

In sum, we cannot agree that a provision specifying an exclusive remedy in the event of breach either nullifies an arbitration provision in the same contract or somehow permits a court, rather than the arbitrator, to determine whether a breach has occurred and thereby resolve the only matter open to dispute. The only remaining basis on which to affirm the district court's ruling is plaintiffs' original argument that Morinda waived the otherwise applicable arbitration provision by agreeing to accept service of the complaint.

## C. Waiver of Arbitration

When, as here, the historical facts are not in dispute and waiver thus becomes a legal question for de novo review, *see Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010), we may decide the issue even though the district court did not resolve it in the first instance. We consider it particularly appropriate to do so here, because the proper disposition is straightforward under controlling precedent, and Morinda clearly put the issue into contention on this appeal in its opening brief, *see* Aplt. Opening Br. at 16-22.

Plaintiffs' argument that Morinda waived arbitration when it initially agreed through counsel to accept service of the complaint is tied to a series of emails between counsel. On June 29, 2010, shortly after mediation of the contract dispute broke down, Morinda's counsel sent an email to plaintiffs' counsel stating, "Following up on our conversation yesterday, we will accept service of your complaint in the Lamkin matter." App. at 83. The complaint had not been

filed by August 6, 2010, when plaintiffs' counsel inquired about arbitration: "Is your client wed to arbitrating this dispute, as opposed to litigating it? In other words, if we file a complaint, will your client move to dismiss to do arbitration?" *Id.* at 85. The timing of this inquiry is telling—it shows plaintiffs remained fully aware of Morinda's claimed right to arbitrate notwithstanding its agreement to accept service of a complaint. Before Morinda responded, plaintiffs filed suit and sent the complaint to Morinda attached to the following email to effect informal service: "Following up on your June 29, 2010 e-mail (which is attached), attached please find the Complaint, Summons, and proposed Acceptance of Service [for the instant lawsuit]. Please sign, date, and return the Acceptance of Service to me for filing with the Court." *Id.* at 88. Morinda did not accept service, as counsel explained by email sent August 27, 2010:

> Our last email from you on this matter was an inquiry as to whether Morinda would waive the arbitration agreement contained in the [purchase contracts]. We did raise the issue with Morinda, and Morinda was in the process of evaluating the request.
>
> In any event, now that you have filed an action in federal court, we are not sure how Morinda will want to proceed, as we have not been able to discuss the filing with Morinda. Given the default dispute mechanism resolution is arbitration, we are not at liberty to accept service of a summons and complaint in a federal court action absent client approval.

*Id.* at 90. The complaint was formally served shortly thereafter.

The above emails do not evince any confirmed intention by Morinda to waive arbitration, nor do they reflect any understanding by plaintiffs that Morinda

-9-

had done so.  On the contrary, the parties' emails of August 6 and August 27 clearly illustrate their joint appreciation of the *un*-waived status of the arbitration issue at the time this suit was commenced.  And, of course, Morinda moved to enforce its right to arbitration promptly thereafter.  Plaintiffs' argument for waiver cannot, therefore, be based on the narrow principle, familiar from the criminal-law context, of an "intentional relinquishment or abandonment of a known right."  *Hill*, 603 F.3d at 773 (internal quotation omitted).

That does not end the inquiry, as waiver in these circumstances includes the broader idea that, regardless of intention, a party's conduct may be such that it should be "prevented on the basis of some equitable principle from asserting a right to arbitration."  *Id.* at 772 (internal quotation omitted).  But the burden on plaintiffs of demonstrating such a waiver is a heavy one in light of the strong federal policy favoring arbitration.  *Id.* at 775.  The inquiry is informed by a set of factors, *see id.* at 772-76 (listing and explaining factors), that together clearly weigh against waiver here:  Morinda's actions were not inconsistent with its right to arbitrate; the litigation machinery had yet to be substantially invoked when plaintiffs were already on notice that Morinda had balked at renouncing its right to arbitrate; Morinda promptly sought to enforce its right to arbitrate upon commencement of suit; Morinda did not interject counterclaims in the litigation; important steps in litigation, such as discovery proceedings, had not taken place; and any prejudice to plaintiffs was primarily self-inflicted, as their unnecessary

commencement of the case was a function of their own failure to get confirmation of Morinda's final intentions as to arbitration before filing suit (any independent prejudice from Morinda's short delay in communicating those intentions was, by comparison, de minimus). We have no difficulty at all in concluding that Morinda did not waive its right to arbitrate.

## D. Attorney Fees and Costs

The contracts at issue provide that "in the event of . . . litigation to enforce the arbitration provisions of this Contract, the prevailing party shall be awarded its costs and reasonable attorney fees." Aplt. App. at 61, 73. Invoking this mandatory provision, Morinda seeks an award of fees and costs in connection with its efforts to compel arbitration. In light of our disposition on the merits, we agree that Morinda is entitled to an award in an amount to be determined by the district court on remand. Determination of the award is independent of, and hence should not interfere with, the prompt referral of the parties' underlying dispute to arbitration.

The judgment of the district court is REVERSED, and the cause is REMANDED with directions for the referral of the dispute to arbitration and for an award of costs and attorney fees to Morinda pursuant to the contract.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

-11-