**Marvin SCHICK, Plaintiff–Appellant,**

v.

**David BERG and Moriarty Leyendecker, Defendants–Appellees.**

**Docket No. 04–2675–CV.**

United States Court of Appeals, Second Circuit.

Argued: April 4, 2005.

Decided: Nov. 17, 2005.

**113**

Stuart A. Blander (Eli Feit, on the brief) Heller, Horowitz & Feit, P.C., New York, New York, for Plaintiff–Appellant.

Salvatore A. Romanello (James W. Quinn, on the brief), Weil, Gotshal & Manges, LLP, New York, New York, for Defendant–Appellee David Berg.

Brett A. Scher, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York, New York, for Defendant–Appellee Moriarty Leyendecker.

Before: WINTER, McLAUGHLIN, and CABRANES, Circuit Judges.

WINTER, Circuit Judge.

Marvin Schick appeals from Judge Sand's grant of summary judgment to appellees David Berg, an individual, and Moriarty Leyendecker, a law firm. Berg and Moriarty Leyendecker were counsel for a group of investors that brought suit against the Marriott Corporation. Pursuant to a negotiated settlement, that suit was converted into a class action, and Schick became an unnamed member of the class. Schick claims that Berg and Moriarty Leyendecker breached their fiduciary duty to him by counseling a third party to bring suit against him. However, Schick was never represented by Berg and Moriarty Leyendecker because, under the notice to class members, his representation by other counsel prevented him from being represented by class counsel. Berg and Moriarty Leyendecker therefore owed Schick no fiduciary duty, and we affirm.

## BACKGROUND

In late 1986, the Marriott Corporation created the Courtyard by Marriott I Limited Partnership ("CBM I") and issued approximately 1,200 CBM I investment units for $100,000 each. Schick was one of the original investors. Schick and other investors eventually became dissatisfied with the performance of the CBM I units. In 1994, Schick formed an *ad hoc* committee of investors to promote their interests and served as committee chairman.

In 1998, Berg and Moriarty Leyendecker filed suit against Marriott in Texas state court on behalf of over 300 named plaintiffs (the "Texas Action"). After an unofficial "mini-trial," the "jury" returned a verdict unfavorable to Marriott. That hypothetical verdict spurred negotiations that resulted in a settlement agreement dated March 9, 2000. Under the terms of the settlement, each CBM I unit holder would receive $134,130 per unit before attorneys' fees.

To include as many potential claimants as possible, the settlement required plaintiffs' counsel to "move for and be granted certification of a settlement class consisting of all CBM I LP Unit holders ...."

This class certification was for the purpose of settlement only. If the proposed settlement were "terminated, modified in any material respect, or fail[ed] to become effective for any reason," the parties would have "reverted to their respective status ... as of the date and time immediate prior to the execution of this Settlement Agreement ...."

Schick expressed his "doubts about the proposed settlement" in a March 8, 2000 letter, one of many he sent to CBM I unit holders. On May 8, 2000, Schick filed a Petition in Intervention in the Texas court objecting to the settlement. That petition identified Schick as "an individual[ ] and ... a limited partner of the Courtyard by Marriott Limited Partnership" and was filed on Schick's behalf by two attorneys, one of whom was Lawrence P. Kolker. In a May 18, 2000 letter to CBM I unit holders, Schick reported that he had "intervened on behalf of myself and as chairman of our partners committee ...." In response to Schick's intervention, Berg took a deposition of Schick on May 24 and 31, 2000. Kolker appeared "for the witness" at the deposition.

One month before that deposition, in April 2000, Berg received a phone call from a man named Les Fuchs, who thought he had been swindled by Schick. In 1987, Fuchs had purchased three CBM I units, and by 1999, he was interested in selling them. He contacted Schick by telephone and offered to sell his units. In an August 16, 1999 letter agreement, Fuchs agreed to sell the units to Schick for $75,000 per unit. Fuchs, after learning of the March 2000 proposed settlement, suspected that Schick had inside knowledge of the favorable mini-trial when he bought Fuchs's units.

According to Fuchs's characterization of his April 2000 conversation with Berg, Berg told Fuchs that he had been "screwed" by Schick. Berg suggested that Fuchs consider some response to Schick but said he would not represent him. Fuchs later called Moriarty Leyendecker, and by August 30, 2000, that firm had agreed to represent Fuchs.

In the Texas Action, a settlement class was certified on August 3, 2000, consisting of all persons who held CBM I units on March 9, 2000. A sixteen-page notice of settlement was sent to class members. Under the terms of the notice, potential class members had until September 15, 2000 to request to be excluded from the settlement class. The notice also stated that "you will automatically be represented by Class Counsel"—including Berg and Moriarty Leyendecker—"unless you request to be excluded from the Class or you enter an appearance through counsel of your own choosing at your own expense." Final judgment approving the settlement was entered in the Texas Action on October 24, 2000, and the agreement was to become final on November 27, 2000. Schick never requested to be excluded from the class.

Meanwhile, on August 31, 2000, Fuchs wrote a demand letter to Schick seeking the difference between their transaction price and the final settlement price with Marriott. Schick responded that he had no inside information at the time of the transaction. On December 11, 2000, an attorney from Moriarty Leyendecker wrote Schick on Fuchs's behalf and reiterated the demand for the difference between their transaction price and the settlement price.

In March 2001, Fuchs filed suit against Schick in Texas state court. Moriarty Leyendecker represented him in that action. The Texas court dismissed the complaint for lack of jurisdiction over Schick. In December 2001, Fuchs then filed an action against Schick in the Southern Dis-

trict of New York, where Schick maintains his place of business. Fuchs claimed fraud and breach of a fiduciary duty that Schick owed Fuchs by virtue of the role Schick assumed with his committee. Fuchs continued to be represented by Moriarty Leyendecker, whose attorneys applied for admission to the Southern District *pro hac vice*. Schick moved to disqualify Moriarty Leyendecker because it had served as class counsel in the Texas Action. On April 10, 2002, Judge Sand denied Moriarty Leyendecker's motion for admission *pro hac vice* on that ground and dismissed Schick's motion to disqualify as moot. On June 4, 2003, Judge Sand granted Schick's motion for summary judgment, concluding that there was no evidence showing that Schick had any advance knowledge of the settlement nor any other confidential information about the litigation when he purchased Fuchs's CBM I units.

On July 25, 2003, Schick filed this action against Berg and Moriarty Leyendecker, arguing that they wrongly helped Fuchs bring suit against him. The Complaint alleged two claims: (i) champerty or barratry and (ii) breach of fiduciary duty. In early 2004, both Berg and Moriarty Leyendecker moved for summary judgment. Schick cross-moved for summary judgment.

Judge Sand granted the defendants' motions for summary judgment and denied Schick's cross-motion. He concluded that no claim for champerty exists under Texas law and that Schick had not met the statutory requirements for barratry. Schick does not challenge these holdings on appeal.

On the breach of fiduciary duty claim, Judge Sand noted that, under Texas law, no attorney-client relationship exists between class counsel and an unnamed class member until certification of the class. Because the class in the Texas Action had not yet been certified, there was no attorney-client relationship between Berg and Schick at the time Berg spoke to Fuchs in April 2000. Consequently, no duty arising out of an attorney-client relationship could have been violated. Further, any independent duty that might have existed between Schick and Berg did not extend beyond a duty to refrain from prejudicing Schick's claims against Marriott. Judge Sand concluded that urging Fuchs to enforce his legal rights against Schick did not prejudice Schick's claims against Marriott.

On the breach of fiduciary duty claim against Moriarty Leyendecker, Judge Sand noted that, though Schick "had advice of other counsel when he intervened" in the Texas Action, he did not ask to be excluded from the class. Thus, certification of the class created an attorney-client relationship between Schick and Moriarty Leyendecker. Judge Sand concluded, however, that the firm's duties under that relationship ended with the approval of the settlement on October 24, 2000. Because the firm did not write to Schick on Fuchs's behalf until December 11, 2000, Judge Sand concluded that the firm did not simultaneously represent Fuchs and Schick and therefore did not breach any duty to its clients under Texas law. In addition, he concluded that Moriarty Leyendecker did not breach its duty to Schick as a previous client because the two matters— the class action against Marriott and Fuchs's claim against Schick—were not "substantially related" and there was no risk of disclosing Schick's confidences in handling the Fuchs matter. Schick appealed.

## DISCUSSION

We review a grant of summary judgment *de novo*. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir.2005). We construe all evidence in the light most favor-

able to the non-moving party and draw all inferences in that party's favor. *Id.*

 Under Texas law, lawyers owe a fiduciary duty to their clients. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex.2002) ("Our courts have long recognized that certain fiduciary duties are owed by . . . an attorney to a client.") (citing *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex.1999)). We need not, however, address the content of any fiduciary duty in this matter because Moriarty Leyendecker and Berg never represented Schick. Schick intervened in the action through counsel of his own choosing, and, under the terms of the class notice, he was never a client of Berg or Moriarty Leyendecker.

The Texas Action was not filed as a class action. It was filed on behalf of over 300 individual plaintiffs and converted to a class action only pursuant to the terms of the March 9 settlement. The class was certified on August 3, 2000, and the sixteen-page notice of class settlement dated that day informed the class members, "If you are a Class member . . . you will automatically be represented by Class Counsel unless you request to be excluded from the Class or you enter an appearance through counsel of your own choosing at your own expense."

Schick clearly entered an appearance in the Texas court through counsel of his own choosing: Kolker. Schick argues in his reply brief that Kolker was counsel to Schick not in his personal capacity but only in his capacity as chairman of Schick's *ad hoc* committee. He notes in that regard that Kolker was paid by the committee. However, this assertion is clearly belied by the record. Schick notified the

other investors that he had "intervened on behalf of myself and as chairman of our partners committee," and the Petition in Intervention described Schick only as "an individual[ ] and . . . a limited partner of the Courtyard by Marriott Limited Partnership." When Schick was deposed, Kolker appeared "for the witness." These statements, so clearly at odds with his present contention, are conclusive on the issue of his representation as an individual investor by Kolker, even if Kolker also represented the committee.

For similar reasons, we conclude that Kolker's representation was "at [Schick's] expense," as those words were intended in the notice of settlement. Schick solicited funds for expenses incurred in challenging the settlement from committee members and makes no claim that he did not participate in whatever payments were made by the committee.[1] The notice's statement regarding the representation by independent counsel at the class member's expense surely includes collective payments of litigation expenses by individual investors. Schick has not argued otherwise.

Schick also argues that, because he never requested to be excluded from the class, he was represented by class counsel. Whether Schick opted-out, however, is distinct from the question of whether Schick was represented by class counsel. Under the terms of the notice of settlement, Schick was represented only by Kolker even though a member of the class.

 Finally, Schick argues that Berg and Moriarty Leyendecker owed him a duty—independent of the attorney-client relationship—by virtue of Schick's class membership. However, under Texas law,

1. Schick's reply brief states that Kolker "was paid entirely by the Committee." We note that the judgment in the Texas Action ordered class counsel to forward a portion of their fees to "counsel for Schick intervenor." How Kolker was ultimately paid does not affect our disposition of this matter.

counsel for a class does not, prior to certification of the class, owe a fiduciary duty to unnamed class members simply by virtue of their membership in the class. The Court of Appeals of Texas has explained that:

> Until a trial court determines that all prerequisites to certification are satisfied, there is no class action, the case proceeds as an ordinary lawsuit, and attorneys for named class members have no authority to represent or otherwise act on behalf of the unnamed class members. Under these circumstances, we decline to hold that named plaintiffs' attorneys owe a precertification duty to unnamed class members.

*Gillespie v. Scherr,* 987 S.W.2d 129, 132 (Tex.App.1998) (footnotes omitted).

## CONCLUSION

We therefore affirm.